UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PHYLLIS L. MCDANIEL,             Case No. 1:07-cv-799

    Plaintiff,                              Barrett, J.
                                         Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. at 14-29) (ALJ's decision)).

**I.**

Plaintiff filed an application for DIB on September 17, 2003, alleging a disability onset date of September 11, 2001, due to visual disturbances. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. Evidentiary hearings, at which Plaintiff was represented by counsel, were held on June 19 and August 6, 2006. Plaintiffs's husband testified on her behalf, and William Brauning testified as a vocational expert.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

On March 26, 2007, the ALJ entered his decision denying Plaintiff's claim. That decision stands as Defendant's final determination consequent to denial of review by the Appeals Council on July 27, 2007. (Tr. 5-7.)

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1) The claimant last met the insured status requirements of the Social Security Act on June 30, 2003. However, she alleges disability in part based upon cortical blindness. She would be entitled to Title II disability insurance regardless of her insured status if she were able to establish disability based upon blindness at any time through the date of this decision. Therefore, her disability status will be adjudicated through the date of this decision rather than merely through her date last insured.

2) The claimant has not engaged in any substantial gainful activity since the alleged disability onset date of September 11, 2001. (20 CFR 404.1520(b), 404.1571 *et seq.*)

3) The claimant has the following "severe" impairments: a history of a remote prior cerebrovascular accident with an associated residual seizure disorder, partial cortical blindness, and Graves' disease affecting her thyroid. (20 CFR 404.1520(c))

4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 CFR 404.1520(d), 404.1525, 404.1526).

5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform basic work activity at all exertional levels. However, she cannot drive automotive equipment, work around hazardous machinery, climb ladders or scaffolds, or otherwise work at unprotected heights. She also cannot perform jobs requiring depth perception, full visual fields, fine detailed work, or the need to see small objects or read small print. She is also limited to performing unskilled tasks.

6) The claimant has been unable to perform past relevant work at all times

since the allege disability onset date.  (20 CFR 404.1565.)

7) The claimant was born on May **, 1947 and is fifty-nine years old, which is defined as an individual of "advanced age."  (20 CFR 404.1563.)

8) The claimant has at least a high school education and is able to communicate in English. .  (20 CFR 404.1564.)

9) Transferability of job skills is not material to the determination of disability because using the Medical-vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills.  (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10) Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform.  (20 CFR 404.1560(c), 404.1566.)

11) The claimant was not under a disability as defined in the Social Security Act, at any time from September 11, 2001, through the date of this decision.  (20 CFR 404.1520(g)).

(Tr. 18 - 29.)

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB.

On appeal, Plaintiff maintains that: (1) the ALJ erred in evaluating the opinion of neuropsychologist, Kathleen Burch; and (2) the ALJ erred in evaluating Plaintiff's pain, credibility, and subjective complaints.  Each argument will be addressed in turn.

**II.**

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows: At Step 1, the ALJ asks if the claimant is still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant

4

can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 1999 WL 777534, at *2 n.1 (6th Cir. Sept. 16, 1999) (*per curiam*).  If the ALJ determines at Step 4 that the claimant can perform her past relevant work, the ALJ need not complete the sequential analysis.  *See* 20 C.F.R. § 404.1520(a).  However, if the ALJ errs in finding that the claimant can perform her past relevant work, the matter should be remanded for further consideration under Step 5.  *See Lauer v. Bowen*, 818 F.2d 636, 641 (7th Cir. 1987).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**A.**

For her first assignment of error, Plaintiff maintains that the ALJ erred in evaluating the opinion of Dr. Burch.  Specifically, Plaintiff maintains that the ALJ ignored the detailed conclusions reached by Dr. Burch, as well as ignored the specific tests results that led her to her conclusions.  Thus, Plaintiff asserts that the ALJ's failure to consider the record as a whole warrants reversal.  *See Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985).  Plaintiff's assertions are not well-taken.

Plaintiff was evaluated by a neuropsychologist, Kathleen Burch, Psy.D., in the fall of 2004, wherein Dr. Burch administered a battery of neuropsychological tests. Testing included intelligence testing (WAIS-III), memory testing (WMS-III), and an achievement test (WRAT-3 arithmetic subtest), as well as many other tests. These included: Hooper Visual Organization Test; Controlled Oral Word Association Test; Trail Making Test; Wisconsin Card Sorting Test; Frontal Lobe Battery; Sensory-Perceptual Examination; Finger Oscillation Test; Grip Strength; Rey-Osterreith Complex Figure Test; and the Millon Clinical Multiaxial Inventory-III. (Tr. 373).

Based on these test results, Dr. Burch concluded that "[b]oth her visual processing deficits and her executive difficulties constitute impediments to Mrs. McDaniel's being able to function effectively at work. She is, in the opinion of this examiner, rendered disabled by her brain injuries." (Tr. 377).

In evaluating Dr. Burch's opinion, the ALJ recognized the doctor's disability finding, but found that her assessment was "contrary to the average-level intelligence and memory scores reported on the WAIS-III and WMS-III . . . ." (Tr. 24).

Moreover, of ten tests administered by Dr. Burch, Plaintiff acknowledges that at least two "were more sensitive to her visual impairment, which generally affected her speed." Dr. Burch commented, however, that despite Plaintiff's "extremely slow performance" on the Hooper Visual Organization test, Plaintiff demonstrated an "average to low average performance on this perceptual problem solving task." (Tr. 375). Thus, even on some of the tests that Plaintiff has singled out, she did as well as she did in IQ,

memory, and achievement testing, *i.e.*, the test results that the ALJ referred to in finding that Plaintiff could perform unskilled work.

Notably, Plaintiff specifically comments on two more of the tests in the neuropsychological battery. She notes that on the Controlled Oral Word Association Test, her score was slightly one standard deviation below average, and that Dr. Burch attributed this score to the impact of her frontal lobe injury. Similarly, Dr. Burch attributed a poor performance on the Wisconsin Card Sorting Test to frontal lobe impairments (although the poor performance was actually no performance, as Dr. Burch indicated that she discontinued the test due to Ms. McDaniel's extreme frustration). (Doc. 14, citing Tr. 375)

However, as noted by the Commissioner, Plaintiff has not discussed the results of another of the neuropsychological tests, specifically her performance on the Frontal Lobe Battery. On that test, or series of tests, Dr. Burch indicated that Plaintiff performed adequately. (Tr. 375).

Here, the ALJ reviewed a report that contained test items that are seen frequently in disability cases, such as Wechsler Intelligence testing, and Wechsler memory testing, as well as the arithmetic portion of the WRAT. Plaintiff scored within the average range on all those tests. (Tr. 24). Based on those scores, the ALJ drew the reasonable conclusion that Plaintiff could perform unskilled work (Tr. 24).

Accordingly, the undersigned finds that the ALJ's decision to give little weight to Dr. Burch's findings is supported by substantial evidence and should not be disturbed.

**B**.

For her next assignment of error, Plaintiff maintains that the ALJ erred in evaluating her subjective symptoms, notably her attentional difficulties and fatigue.

When considering a claim for disability based on pain and subjective complaints, the Court is guided by the Sixth Circuit's instruction that, initially, there must be objective evidence of an underlying medical condition. *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. *Id.*; *see also Felisky,* 35 F.3d at 1038-39.

Moreover, it is within the discretion of the ALJ - who actually meets with and takes testimony from an individual plaintiff - to evaluate that plaintiff's credibility. As the Sixth Circuit has found: "[i]t is for the [Commissioner], not a reviewing court, to make credibility findings." *Felisky v. Bowen,* 35 F.3d 1027,1036 (6th Cir. 1994); *see also McGuire v. Commissioner of Soc. Sec.,* No. 98-1502, 1999 WL 196508, at *6 (6th Cir. Mar. 25, 1999) (*per curiam*) ("An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility").

Here, Plaintiff testified that she had poor cognitive skills due to stroke residuals such that she had difficulty with thought processes and completing tasks. (Tr. 487.) She

further noted she has problems with he memory and concentration. (Tr. 502.) For example, she testified that she likes to listen to books on tape, but she has to back track - "push that rewind thing" - to help her absorb the material. (Tr. 503.)

Plaintiff maintains that her subjective complaints are supported by objective medical testing, notably an MRI showed an infarct to the right occipital lobe (which eventually resulted in visual problems), as well as evidence of bilateral frontal lobe changes, including white matter edema within the frontal lobes bilaterally. (Tr. 182, 183.)

Plaintiff asserts that the ALJ failed to consider whether the frontal lobe injuries could have reasonably caused the problems that Plaintiff experiences in attention and focus. However, Dr. Burch's examination revealed findings of a General Memory Index score of 92, which score placed Plaintiff's memory in the average range. (Tr. 375). Dr. Burch also reported a Working Memory score that was merely low average. (Tr. 375). However, Dr. Burch noted that this score was likely depressed due to a very poor performance on one subtest, and she observed that this particular subtest puts a premium on visual scanning. (Tr. 375). Despite these rather definitive scores on memory testing, the Commissioner notes that Plaintiff emphasizes her problems with memory and concentration. In addition, Plaintiff also fails to point to other objective measures to contradict the ALJ's reliance on them. Instead, she bases her credibility argument, in large part, on testimony presented by herself and her husband. (Doc. 8 at 17-18.)

Plaintiff further alleges that the ALJ "never considered whether the frontal lobe injuries could reasonably cause the problems [claimant] experienced in

9

attention and focus." (*Id*. at 18.)  However, as discussed above, the ALJ very thoroughly considered Dr. Burch's report and limited Plaintiff to unskilled work.  (Tr. 24).

With respect to Plaintiff's complaints of fatigue, the ALJ observed that although Plaintiff's alleged severe fatigue was associated with Graves' Disease, her treatment records showed that her overactive thyroid had been adequately controlled with treatment. (Tr. 23).  As noted by the ALJ, Plaintiff's thyroid functioning had, at the time of his decision, been well regulated with these treatment measures for an extended period of time, and the record contained no objective justification for her allegations of needing to nap several times per day.  (Tr. 23-24).  Moreover, Plaintiff's testimony supports this aspect of the ALJ's findings as she acknowledged that her thyroid laboratory findings had produced normal results.  (Tr. 486).

Furthermore, the ALJ properly characterized the evidence regarding Plaintiff's activities, and it was appropriate for him to consider this factor in making his credibility finding. *See Warner*, 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain.").

Here, the ALJ properly considered his own observations in making a credibility finding.  SSR 96-7p; *Buxton*, 246 F.3d at 773 ("The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints.").

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.

10

*See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003).

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and should be **AFFIRMED.**

2. As no further matters remain pending for the Court's review, this case should be **CLOSED.**

Date: March 3, 2009                                           s/Timothy S. Black
                                                              Timothy S. Black
                                                              United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PHYLLIS L. MCDANIEL,   Case No. 1:07-cv-799

    Plaintiff,   Barrett, J.
       Black, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

    Attached hereto is the Report and Recommended Decision of the Honorable Timothy S. Black, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).